```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION


VERDALE WILLIAMS,                 )
                                  )
           Plaintiff              )
                                  )
         v.                       )  Case No. 2:06 cv 43
                                  )
MICHAEL J. ASTRUE,[1]             )
Commissioner of Social Security   )
                                  )
           Defendant              )
```

## OPINION AND ORDER

This matter is before the court on the Petition for Judicial
Review of the Decision of the Commissioner of Social Security
filed by the plaintiff, Verdale Williams, on February 9, 2006.
For the reasons set forth below, the decision of the Commissioner
is **AFFIRMED**.

## Background

The plaintiff, Verdale Williams, initially applied for
Supplemental Security Income and Disability Insurance Benefits on
October 17, 2003, alleging a disability onset date of September
8, 2003. (Tr. 54, 181) The claims were denied initially on March
22 and 23, 2004, and upon reconsideration on May 21 and May 24,
2004. (Tr. 23, 185, 24, 191) Williams requested a hearing before
an Administrative Law Judge ("ALJ") on June 1, 2004. (Tr. 36) A
hearing before ALJ Daniel Dadabo was held on July 18, 2005, at
which vocational expert Linda Gels testified. (Tr. 208)  On July

---

[1]In accordance with Federal Rule of Civil Procedure 25(d)(1), Michael J.
Astrue, who became Commissioner of Social Security on February 12, 2007, is
automatically substituted as the defendant in this action.

29, 2005, the ALJ denied Williams' applications by written
decision. (Tr. 15) Following a denial of his request for review
by the Appeals Council on December 21, 2005, Williams filed a
complaint in this court on February 9, 2006.

Williams was 38 years old at the time of the hearing before
ALJ Dadabo. Williams, who left school prior to completing the
12th grade, worked as a concrete finisher, glass loader, land-
scaper, janitor, and most recently, security guard. (Tr. 73, 285)
On August 28, 2003, while employed as a security guard, Williams
was admitted to the Methodist Hospital Emergency Room because
Williams believed that he was diabetic and that his blood sugar
level was critically high. (Tr. 136-137) Williams later expressed
concern, based on this incident, that he was subject to slipping
into a diabetic coma. (Tr. 96) Methodist Hospital released
Williams that same day after he was diagnosed with diabetes, and
he was prescribed glucophage and a 2000-calorie/day diet. (Tr.
146-147)

Approximately one month later, Williams returned to the
Methodist Hospital Emergency Room because of ongoing neck and
shoulder pain from injuries he suffered in a motor vehicle
accident 12 days earlier. (Tr. 148-159) An x-ray revealed no
evidence of fracture or dislocation. (Tr. 153) On October 17,
2003, about one month after this second visit to Methodist
Hospital, Williams filed his applications for disability benefits
and supplemental income. (Tr. 54, 181) In support of the applica-
tions, Williams referenced his diabetes, a prior knife injury he

2

sustained that restricted the use of his hands, high blood
pressure, and blurred vision. (Tr. 72)

In January 2004, both Williams and his wife, Lutrice,
completed reports regarding Williams' daily activities. Williams
reported that he experienced dizziness when climbing stairs and
was capable of walking for only two blocks before being required
to stop due to shortness of breath. (Tr. 99) He stated that, due
to his hand injury, he was unable to lift more than five pounds
and drove only "sometimes" due to his blurred vision.  (Tr. 100)
Williams further stated that he limited the duration of his
visits to the store because, if he stayed too long, he began to
"stress out." (Tr. 101) Lutrice reported that Williams' activi-
ties were limited to some ironing and mowing the lawn, which he
accomplished by taking breaks or with the help of his brother.
(Tr. 92) Lutrice also stated that Williams no longer lifted
weights for exercise and that he maintained fears that his exper-
ience of blurred vision and dizziness indicated a propensity to
fall into a diabetic coma. (Tr. 93)

On November 14, 2003, Dr. Benjamin Anigbo examined Williams
and reported a "guarded" diagnosis of brittle diabetes and
diabetic neuropathy. (Tr. 165) Dr. Anigbo indicated that this
examination was the first time that he saw Williams and noted
otherwise normal conditions. (Tr. 161-167) In response to a
series of questions on an administration form, Dr. Anigbo stated
that it was "unknown" whether Williams' functional limitations
would improve with regular medical care, which he indicated would

3

consist of "routine office visits and medications." (Tr. 166) Nevertheless, Dr. Anigbo indicated that Williams' condition was expected to improve enough to permit Williams to participate in gainful employment. (Tr. 166) However, he checked a box indicating that this improvement would not occur for a period of three to four years. (Tr. 166)

In March 2004, Dr. Teofilo Bautista conducted a consultative exam. (Tr. 168-171) Dr. Bautista noted that Williams' right hand injury prevented him from fully closing his hand and also noted a contracture deformity of the fourth finger of his left hand. (Tr. 169) Dr. Bautista indicated that Williams was able to pick up coins using the thumb and index fingers of both hands. (Tr. 170) Dr. Bautista also described left knee tenderness but stated that Williams maintained a normal gait and the ability to walk eight blocks without a cane. (Tr. 168, 169)

Dr. W. Bastnagel completed a physical residual functional capacity assessment on March 23, 2004. (Tr. 172-179) In this RFC, Dr. Bastnagel indicated that Williams occasionally could lift 20 pounds, frequently lift 10 pounds, and stand, walk, or sit up to six hours in an eight-hour workday. (Tr. 173) Dr. Bastnagel stated that these conclusion were based on Williams' conditions of non-insulin dependent diabetes, decreased range of motion in his knees, and grip and muscle strength within normal ranges. (Tr. 173) Dr. Bastnagel noted that Williams' allegations regarding the nature of his symptoms were supported but that his

4

allegations regarded the severity of these symptoms was not. (Tr. 177)

On July 18, 2005, at the hearing before ALJ Dadabo, Williams described the job responsibilities in his most recent work as a security guard, noting an occasional but infrequent need to lift boxes and write incident reports. (Tr. 215) Williams also testified that he carried a weapon and, on at least one occasion, had to restrain someone. (Tr. 231)

Williams testified that he attempted to help with cleaning around the house but could not assist with mopping or sweeping. (Tr. 218) Williams reported that within the week before the hearing, he had stopped driving due to his vision problems. (Tr. 215) He also stated that he limited his activities on the recommendation of Dr. Anetwe, who, according to Williams, advised him to participate in "no more games, no more employment and no games or no activities." (Tr. 219) Williams, after describing the August 2003 incident in which his high blood sugar levels were treated at the Methodist Hospital Emergency Room, stated that his former employer terminated his employment because of the fear that he would have another episode on the job. (Tr. 223) Williams further testified that he had been diagnosed with high blood pressure by Dr. Anetwe but that he was not receiving treatment for the condition. (Tr. 225) The record contains no further evidence of Williams' treatment with Dr. Anetwe.

Vocational Expert Linda Gels testified at the hearing that Williams' most recent position as a security guard was classified

5

as a light, semi-skilled job in the dictionary of occupational titles and that his position as a janitor, as Williams described it, corresponded to the light, unskilled position of cleaner-/housekeeper. (Tr. 232, 234) In his first hypothetical to the vocational expert, the ALJ described a person with Williams' work and educational background who otherwise met the functional capacity described in the RFC completed by Dr. Anigbo. (Tr. 234) The ALJ further specified no visual limitations and no limitations on manipulation, bending, pushing, or pulling.(Tr. 235) The VE responded that under these restrictions, Williams would be capable of performing his past work. (Tr. 235) When the ALJ altered the hypothetical to limit it to sedentary work and accounted for visual and manipulative limitations, the VE testified that neither past work nor alternatives in the dictionary of occupational titles would match the hypothetical. (Tr. 236)

At the hearing, Williams' attorney stated that he believed Williams' Gary High School records might include pertinent information regarding Williams' mental capacity. (Tr. 229) The attorney stated that he did not know whether the records would provide evidence that Williams had mental limitations that would preclude unskilled work, and the ALJ left the record open so that this evidence could be included. (Tr. 229) These records were not submitted to the ALJ. Instead, following the ALJ's denial, the Gary High School records were submitted with Williams' appeal of the ALJ's decision to the Appeals Council.

In his decision denying Williams' applications, ALJ Dadabo found that Williams' diabetes, left and right hand injuries, and arthritis of the knees were severe impairments but that they did not meet any listing requirement. (Tr. 17) The ALJ gave Dr. Anigbo's RFC "very limited weight." (Tr. 18) He noted that, despite Dr. Anigbo's conclusion that Williams would be unable to work for three to four years, Dr. Anigbo indicated no specific limitations and noted that Williams was able to carry out normal activities. (Tr. 17) In addition, despite Williams' hand injuries, Dr. Anigbo indicated that Williams had no abnormalities. (Tr. 17) Finally, the ALJ noted that Dr. Anigbo's experience with Williams was limited to a single office visit. (Tr. 17)

The ALJ also found Williams' testimony less than credible, referring to inconsistencies in his testimony that "detract from [his] reliability as an accurate historian." (Tr. 19) The ALJ based this conclusion on inconsistencies in Williams' statement regarding his inability to walk more than one-half block and lift more than five pounds. (Tr. 19) The ALJ also cited to significant confusion in the record regarding the apparent overlap of the dates of Williams' employment and the onset of his disability. (Tr. 20) Finally, the ALJ expressed concern over Williams' testimony regarding his vision as well as the fact that Williams had filed multiple applications for social security benefits. (Tr. 20) The ALJ concluded that Williams retained the capacity for light work and was able to perform his past relevant work. (Tr. 21)

7

<u>Discussion</u>

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence.  42 U.S.C. §405(g) ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003); *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct 1420, 1427, 28 L.Ed.2d 852 (1972) (*quoting* *Consolidated Edison Company v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed.2d 140 (1938)). *See also* *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002); *Green v. Shalala,* 51 F.3d 96, 101 (7th Cir. 1995).  An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. *Golembiewski*, 322 F.3d at 915; *Cannon v. Apfel,* 213 F.3d 970, 974 (7th Cir. 2000).  However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex. rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act.  The claimant must show

8

that he is unable "to engage in any substantial gainful activity
by reason of any medically determinable physical or mental
impairment which can be expected to result in death or which has
lasted or can be expected to last for a continuous period of not
less than 12 months." 42 U.S.C. §423(d)(1)(A). The Social Secu-
rity regulations enumerate the five-step sequential evaluation to
be followed when determining whether a claimant has met the
burden of establishing disability. 20 C.F.R. §§404.1520,
416.920.  The ALJ first considers whether the claimant is pres-
ently employed or "engaged in substantial gainful activity." 20
C.F.R. §§404.1520(b), 416.920(b).  If he is, the claimant is not
disabled and the evaluation process is over; if he is not, the
ALJ next addresses whether the claimant has a severe impairment
or combination of impairments which "significantly limits . . .
physical or mental ability to do basic work activities."  20
C.F.R. §§404.1520(c),  416.920(c).  Third, the ALJ determines
whether that severe impairment meets any of the impairments
listed in the regulations.  20 C.F.R. § 401, pt. 404, subpt. P,
app. 1.  If it does, then the impairment is acknowledged by the
Commissioner to be conclusively disabling.  However, if the
impairment does not so limit the claimant's remaining capabili-
ties, the ALJ reviews the claimant's "residual functional capac-
ity" and the physical and mental demands of his past work.  If,
at this fourth step, the claimant can perform his past relevant
work, he will be found not disabled. 20 C.F.R. §§ 404.1520(e),
416.920(e).  However, if the claimant shows that his impairment

9

is so severe that he is unable to engage in his past relevant
work, then the burden of proof shifts to the Commissioner to
establish that the claimant, in light of his age, education, job
experience and functional capacity to work, is capable of per-
forming other work and that such work exists in the national
economy.   42 U.S.C. §423(d)(2); 20 C.F.R. §§404.1520(f),
416.920(f).

Williams' initial challenge regards the nature of this
court's review of the Appeals Council's denial in light of the
submission of evidence to the Appeals Council that was not before
the ALJ. Specifically, Williams asserts that because of the Gary
High School records, the Appeals Council was required to reverse
the ALJ's conclusion and remand. According to Williams, the
records showed that he met the listing for mental impairment at
20 C.F.R. Pt. 404, Subpt. P., App. 1, §12.05C.

Social Security regulations provide that the Appeals Council
must consider additional new and material evidence "only where it
relates to the period on or before the date of the administrative
law judge hearing." 20 C.F.R. §404.970(b). The regulation goes on
to state that when it includes new evidence, the Appeals Council
shall review the entire record to determine if the ALJ's decision
is in accord with the weight of the evidence of the entire
record, including the new evidence. ***Perkins v. Chater***, 107 F.3d
1290, 1293-94 (7th Cir. 1997). If the Appeals Council erred in
failing to consider new evidence, for instance by incorrectly
concluding the evidence was not "new" or "material" as required

by the regulations, the error itself is reviewable by the court as a matter of law. **Perkins**, 107 F.3d at 1294. "In the absence of such an error, however, the council's decision whether to review is discretionary and unreviewable." **Perkins**, 107 F.3d at 1294.

A distinct provision, 42 U.S.C. §405(g), sentence six, permits this court to base a remand on "new evidence which is material and that there is good cause for the failure to incorporate" earlier in the proceeding. 42 U.S.C. §405(g). The standard under §405(g) for the court to order review of new evidence by the ALJ requires the claimant to show that the evidence was not in existence or not available to the claimant and that it presents a "'reasonable probability' that the ALJ would have reached a different conclusion had the evidence been considered." **Schmidt v. Barnhart**, 395 F.3d 737, 742 (7th Cir. 2005). The first provision, 20 C.F.R. §404.970(b), regards the standard applied when new evidence is submitted during the Appeals Council stage; the latter, §405(g), applies when new evidence is submitted first with the petition for judicial review.

Williams confuses these standards when he argues that the Appeals Council "committed an error of law by failing to find [his] school records material evidence." (Opening Brief, p. 9) The Appeals Council's decision would be subject to *de novo* review as an error of law if it erroneously had refused to consider the evidence. However, that is not what happened: the Appeals Council expressly considered these records and still denied Williams' request for review. (Tr. 4, 5)  Accordingly, the Appeals Coun-

cil's denial equates to a conclusion that the ALJ's decision remains in accord with substantial evidence in the record. Pursuant to §405(g), this court does not independently review that decision. Rather, the Appeals Council's decision to deny review makes the ALJ's decision the "final decision," subject to this court's review. *See* ***Sims v. Apfel*** 530 U.S. 103, 106-07, 120 S.Ct. 2080, 2083, 147 L.Ed.2d 80 (2000)("SSA regulations provide that, if the Appeals Council grants review of a claim, then the decision that the Council issues is the Commissioner's final decision. But if, as here, the Council denies the request for review, the ALJ's opinion becomes the final decision."). Accordingly, because these high school records have been incorporated into the record, these circumstances do not implicate a sentence six remand by this court ordering the ALJ to consider this "new evidence." *See* ***Schmidt***, 395 F.3d at 742. Further, there is no indication that the Appeals Council failed to consider this evidence material. Williams' objection is not based upon a failure to find this evidence material because, by considering it, the Appeals Council acknowledged its materiality. Rather, Williams objects to the Appeals Council's failure to find this evidence determinative in his favor.

Under §405(g), the ALJ's decision, not the Appeals Council denial of review, is the final decision subject to this court's review. Under the standards of that section, there is no basis for requiring the ALJ also to reconsider the record in light of this evidence. First, Williams cannot show this evidence was

12

unavailable. In fact, Williams' counsel expressly referenced this information at the hearing before the ALJ, and the ALJ stated that the record would be held open to permit the examination of this evidence. Williams' knowledge of this evidence and the failure to capitalize on the opportunity to submit this before the ALJ's decision precludes any conclusion that the evidence was unavailable or not in existence.

Further, there also is no indication that this evidence is material. Among eight pages of high school records, there is a single, handwritten notation of "scale IQ 65." (Tr. 197-204) Williams first argues that this evidence is material because it shows that he meets the listing at §12.05, Mental Retardation. Even considering this handwritten note medical evidence, Williams has not met the requirements of §12.05C. "These are the four requirements for a finding of mental retardation under Listing §12.05C: (1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning initially manifested during the developmental period before age 22; (3) a valid verbal, performance, or full scale IQ of sixty through seventy; and (4) a physical or other mental impairment imposing an additional and significant work-related limitation of func-tion." *Adkins v. Astrue*, 2007 WL 1100840 at *4 (7th Cir. 2007); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006)(noting that retardation "requires besides a low IQ limitations in the skills required in everyday life.").  There is no argument made that Williams suffers from generally subaverage intellectual function-

13

ing. The number of jobs he has held, including that of an armed security guard, counsels against the conclusion.

Williams' remaining argument is that the IQ evidence is material because it may have been the cause of his inconsistent testimony. This argument, limited to a single sentence in his brief, provides no basis for making the assumption that there is a causal relationship between a low IQ and inaccurate testimony. Accordingly, Williams' high school records do not support remand of this matter.

Williams' direct challenges to the ALJ's decision begin with an objection to the lack of weight accorded the consultative exam by Dr. Bautista and the assigning of "controlling weight" to the opinion of Dr. Bastnagel, a non-examining state agency doctor.  A treating physician's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically accept-able clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. §404.1527(d)(2). *See also* **Gudgell v. Barnhart**, 345 F.3d 467, 470 (7th Cir. 2003); **Skarbek v. Barnhart**, 390 F.3d 500, 503 (7th Cir. 1996).  The ALJ must "minimally articulate his reasons for crediting or rejecting evidence of disability." **Clifford v. Apfel**, 227 F.3d 863, 870 (7th Cir. 2000) *(quoting* **Scivally v. Sullivan**, 966 F.2d 1070, 1076 (7th Cir. 1992)). *See also* 20 C.F.R. §404.1527(d)(2) ("We will always give good reasons in our

14

notice of determination or decision for the weight we give your treating source's opinion.").

Internal inconsistencies in a treating physician's opinion may provide a good reason to deny it controlling weight. 20 C.F.R. §404.1527(c)(2); **Clifford**, 227 F.3d at 871. Furthermore, controlling weight need not be given when a physician's opinions are inconsistent with his treatment notes or are contradicted by substantial evidence in the record, including the claimant's own testimony. *See e.g.* **Latkowski v. Barnhart**, 93 Fed. Appx. 963, 970-71 (7th Cir. 2004); **Jacoby v. Barnhart**, 93 Fed. Appx. 939, 942 (7th Cir. 2004).  Ultimately, the weight accorded a treating physician's opinion must balance all the circumstances, with recognition that, while a treating physician "has spent more time with the claimant," the treating physician also may "bend over backwards to assist a patient in obtaining benefits . . . [and] is often not a specialist in the patient's ailments, as the other physicians who give evidence in a disability case usually are." **Hofslien v. Barnhart**, 439 F.3d 375, 377 (7th Cir. 2006)(internal citations omitted).

In this matter, none of the physicians - Dr. Anigbo, Dr. Bautista, or Dr. Bastnagel - are "treating physicians." *See* 20 C.F.R. §404.1502 ("Treating source means your own . . . medical source . . . who has had an ongoing treatment relationship with you."),  Accordingly, the regulations that require giving "con-trolling weight" to the opinions of treating physicians under certain circumstances are not implicated directly in this matter.

15

Rather, Williams argues that the ALJ did not sufficiently articu-
late the reasons behind the weight he gave Dr. Bautista's opinion
and erred when he gave the state agency physician, Dr. Bastnagel,
"controlling weight."

Williams' specific objection to the ALJ's alleged failure to
articulate his rationale ignores key statements in the ALJ's
decision. Williams asserts that the ALJ failed to explain why he
did not consider Williams' limitations to the use of his hands
or, due to arthritis, the use of his legs. In fact, the ALJ did
consider the injury to Williams' hands.  However, he recognized
that, according to Dr. Bautista's records, Williams retained the
ability to pick up coins with the thumb and index finger of both
hands, could button with both hands, and could put on socks and
tie his shoes with either hand. Further, the ALJ noted that the
record indicated only "slight 4/5 motor strength reduction." (Tr.
18) The ALJ also pointed to the record to note Williams' moder-
ately decreased range of motion in his knees and an ability to
squat only briefly. The ALJ expressly relied on this evidence and
Dr. Bastnagel's opinion in concluding that, with these condi-
tions, Williams retained the capacity for light exertional
activity. This conclusion both is articulated sufficiently and
supported in the record.

Finally, the ALJ inaccurately used the term "controlling
weight" to describe the fact that he relied on the opinion of the
non-treating state agency physician. However, notwithstanding
this label, the ALJ's reliance on a state agency opinion was not

16

misplaced. *See* 20 C.F.R. §404.1527(f); SSR 96-6p. The ALJ's use
of the term does not affect the outcome of this matter, and this
court will not remand merely to make a minor correction to
terminology. *See* **Fisher v. Bowen**, 869 F.2d 1055, 1057 (7th Cir.
1989) ("No principle of administrative law or common sense
requires us to remand a case in quest of a perfect opinion unless
there is reason to believe that the remand might lead to a
different result.").

Williams also objects to the ALJ's decision to give his
testimony less than full credibility when he stated that Wil-
liams' inconsistent testimony detracted "from [his] reliability
as an accurate historian." (Tr. 19) This court will sustain the
ALJ's credibility determination unless it is "patently wrong" and
not supported by the record. **Prochaska v. Barnhart**, 454 F.3d 731,
738 (7th Cir. 2006); **Jens v. Barnhart**, 347 F.3d 209, 213 (7th Cir.
2003). The ALJ's "unique position to observe a witness" entitles
his opinion to great deference. **Nelson v. Apfel**, 131 F.3d 1228,
1237 (7th Cir. 1997); **Allord v. Barnhart**, 455 F.3d 818, 821 (7th
Cir. 2006).  However, if the ALJ does not make explicit findings
and does not explain them "in a way that affords meaningful
review," the ALJ's credibility determination is not entitled to
deference. **Steele v. Barnhart**, 290 F.3d 936, 942 (7th Cir.
2002).  Further, "when such determinations rest on objective
factors or fundamental implausibilities rather than subjective
considerations [such as a claimant's demeanor], appellate courts

17

have greater freedom to review the ALJ's decision."  *Clifford*, 227 F.3d at 872.

The ALJ must determine a claimant's credibility only after considering all of the claimant's "symptoms, including pain, and the extent to which [the claimaint's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. §404.1529(a); *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004).  If the claimant's impairments reasonably could produce the symptoms of which the claimant is complaining, the ALJ must evaluate the intensity and persistence of the claimant's symptoms through consideration of the claim-ant's "medical history, the medical signs and laboratory find-ings, and statements from [the claimant, the claimant's] treating or examining physician or psychologist, or other persons about how [the claimant's] symptoms affect [the claimant]."  20 C.F.R. §404.1529(c); *Schmidt*, 395 F.3d at 746-47 ("These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding.").  He must "build an accurate and logical bridge from the evidence to [his] conclusion."  *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (*quoting* *Clifford,* 227 F.3d at 872).  When the evidence conflicts regarding the extent of the claimant's limitations, the ALJ may not simply rely on a

18

physician's statement that a claimant may return to work without examining the evidence the ALJ is rejecting.  *See* **Zurawski**, 245 F.3d at 888 (*quoting* **Bauzo v. Bowen**, 803 F.2d 917, 923 (7th Cir. 1986)) ("Both the evidence favoring the claimant as well as the evidence favoring the claim's rejection must be *examined*, since review of the substantiality of evidence takes into account whatever in the record fairly detracts from its weight.") (emphasis in original).

Williams' first argument is that the ALJ's statement was not a credibility determination and improperly faulted Williams' poor memory as inconsistent testimony. According to Williams, the ALJ's statement doubting Williams' reliability was not a sufficient articulation of the reasons discounting his testimony. The court concludes that the ALJ's determination that Williams' "reliability" suffered was equivalent to a credibility determination. Further, the ALJ pointed to specific details in support of this determination. Williams specifically argues that the ALJ improperly rejected his testimony regarding his inability to use his hands, stating that the evidence showed both deformities and reduced grip strength. However, Williams glosses over the details of this medical evidence, which showed that his grip strength was reduced only moderately and that he retained significant manipulative ability. Further, the ALJ noted Williams' own inconsistent testimony, which indicated that, despite suffering these injuries in 1996, in March 2004, he reported an ability to lift 75 pounds and only later indicated that he could lift less than five

19

pounds. The ALJ also pointed out that Williams provided inconsis-
tent testimony regarding his ability to walk, which varied from
less than a block, to two blocks, and then to as much as eight
blocks. The ALJ's conclusion that Williams' testimony regarding
the impact of his conditions was inconsistent and not fully
supported by the medical evidence in the record cannot be charac-
terized as patently wrong. Accordingly, the ALJ's decision is
affirmed. *See* **Prochaska,** 454 F.3d at 738.

_____

For the foregoing reasons, pursuant to Sentence four of 42
U.S.C. §405(g), the decision of the Commissioner is **AFFIRMED**. The
Clerk is directed to close this case.

ENTERED this 25th day of June, 2007

s/ ANDREW P. RODOVICH
United States Magistrate Judge

20